Roy Romer State Treasurer 140 State Capitol Denver, Colorado 80203
Dear Mr. Romer:
I am writing in response to a letter dated May 20, 1980 from Dick R. Murphy, director of treasury operations, which requests a legal opinion concerning the application of an interpretive ruling issued by the Comptroller of the Currency for the federal government. In that letter Mr. Murphy forwards a request from the First National Bank of Denver (the "bank") for an opinion of this office whether state warrants processed by the bank are valid and enforceable obligations of the State of Colorado supported by a pledge of the full faith and credit of the State of Colorado.
QUESTION PRESENTED AND CONCLUSION
The specific question presented by Mr. Murphy's letter is as follows: Are warrants issued by the State of Colorado valid and enforceable obligations of the State of Colorado, as contemplated by interpretative ruling 7.1185 (12 C.F.R. § 7.1185 (1980)) issued by the Comptroller of the Currency?
 It is my opinion that state warrants which are paid by the treasurer pursuant to agreement with the bank are valid and enforceable obligations of the state under the circumstances set out in more detail in this letter.
ANALYSIS
The following relevant circumstances have been described by legal counsel for the bank. The state treasurer and the bank have entered into an agreement whereby state warrants are accepted and processed by the bank for the state. The bank receives warrants submitted for payment and advances funds to pay such warrants prior to acceptance of the warrants by the state treasurer. The bank delivers to the treasurer a list of warrants processed each day. The treasurer then returns to the bank any warrants the treasurer will not accept and pay by a deadline set in their agreement. Sufficient funds to cover those warrants accepted by the treasurer are subsequently transferred to the bank by check, by draft, or by other mutually acceptable form of payment. The bank then returns through the bank collection system any warrants which the state has refused to accept. The bank requires the treasurer to return unaccepted warrants by a deadline so that the bank can return those items through the bank collection system prior to deadlines set by that system.
The result of this procedure is that the bank's books show an overdraft, in the amount of the warrants paid, from the time the bank advances its funds until payment is received from the state. The aggregate amount of these warrants often exceeds the bank's federal lending limit, as defined by 12 U.S.C. § 84 (1979). The bank's counsel states that if the amount of warrants for any particular day is considered to be a loan by the bank, and said amount exceeds the bank's federal lending limit, then the bank may be in violation of the lending limit restrictions of12 U.S.C. § 84 (1979). For purposes of this opinion letter I will assume that this overdraft is a loan pursuant to federal law, and limit my analysis to considering whether the overdraft is a valid and enforceable obligation of the state.
The bank's legal counsel advises that an exemption exists for obligations of the state which meet the criteria set forth in the Comptroller of the Currency's interpretive ruling 7.1185, a copy of which has been provided by the bank's counsel. That interpretive ruling states as follows:
 7.1185 Loan or Credit Guaranteed by State or Political Subdivision.
 To the extent a loan or other extension of credit to a bank customer is guaranteed by a state or political subdivision thereof, possessing general powers of taxation, including property taxation, the loan or credit extension is not an obligation of the customer for the purpose of 12 U.S.C. § 84
if the guaranty is supported by a pledge of the full faith and credit of the state or subdivision. The lending bank should obtain the opinion of competent counsel that the guaranty is a valid and enforceable obligation of the public body. See Regulation 1.3(g) (12 C.F.R. 1.3(g)) and para. 7.2145(a) and (f).
The situation addressed in this interpretive ruling differs from that described by the bank's counsel. The overdraft which concerns the bank's counsel is a direct obligation of the state and does not involve a state guaranty of an extension of credit to a third party. The remainder of this opinion will consider the validity of that direct obligation.
Nature of state warrants. The state treasurer must promptly deposit in national or state banks doing business in this state, all moneys received by the treasury department. Withdrawals may be made by checks or drafts drawn and signed in such manner as the state treasurer shall direct. C.R.S. 1973,24-36-104(1). The treasurer is authorized to disburse state moneys upon receipt of a state warrant signed by the controller. C.R.S. 1973, 24-30-202(7).
The treasurer is obligated to pay warrants in the order presented to the treasury department for payment. C.R.S. 1973,24-36-106(2). A state warrant may be issued for disbursement of money from the state treasury only to pay obligations under expenditures authorized by appropriation and allotment, and not in excess of the amount so authorized. C.R.S. 1973,24-30-202(5)(a) (Supp. 1979). A state warrant is subject to cancellation under certain circumstances. Once a warrant is cancelled, the state treasurer may not pay that warrant if presented for payment. C.R.S. 1973, 24-30-202(8).
A state warrant issued upon the signature of the controller and accepted by the treasurer, is an enforceable obligation of the State of Colorado. Until a particular warrant is actually accepted by the state treasurer, however, it is subject to cancellation and therefore may not be a binding obligation of the state. Those warrants for which the bank advances funds and which are accepted by the state treasurer constitute valid and enforceable obligations of the state.
When the bank advances funds for warrants which are returned by the treasurer by the agreed deadline, such advances do not constitute a valid obligation of the state. The state cannot be bound to pay warrants which it has not accepted.
Contractual obligations to pay warrants. It is also my opinion that the treasurer may contractually obligate himself to pay the bank for a warrant which is not returned to the bank by the deadline set out in their agreement. It is my understanding that the treasurer has agreed to reimburse the bank for any loss the bank may sustain if the treasurer fails to return a warrant by the specified deadline. The state may retain legal remedies against other parties who deal with the warrants. That agreement appears to be a reasonable step to create a banking relationship which permits the bank to timely return items through the banking collection system in conformity with the Uniform Commercial Code and federal requirements.
Even though the treasurer is required to refuse to pay certain warrants which are not returned by the agreed upon deadline, the treasurer can contractually obligate himself to repay the bank for any warrants which the bank is unable to return through the collection system. That agreement is a valid obligation of the state. Consequently the treasurer is obligated to pay the bank for a warrant when it is not returned by the specified deadline.
Constitutional limitations on the state incurring debt. If the bank's advance of funds to cover state warrants is considered to be a loan to the state, an additional problem is presented whether such a loan is a "debt" within the meaning of article XI, section 3 of the Colorado Constitution. That state constitutional provision sets out very severe restrictions upon the state's power to incur a "debt by loan." It is my opinion that any obligation of the state to the bank under the circumstances described above, is not a constitutional "debt" within the meaning of article XI, section 3. It is significant that the obligation involved here is a direct obligation of the state, since the state is constitutionally prohibited from pledging its credit or faith for the debt of a third party. Colo. Const. art. XI, § 1.
To constitute a debt in that constitutional sense, a future legislature must be obligated to appropriate funds to discharge the debt. See In re Colorado StateSenate, 193 Colo. 298, 566 P.2d 350 (1977); Cityof Trinidad v. Haxby, 136 Colo. 168, 315 P.2d 204
(1957); see also Johnson v.McDonald, 97 Colo. 324, 49 P.2d 1017 (1935); In reSenate Resolution No. 2, 94 Colo. 101, 31 P.2d 325
(1933). It has been held that no constitutional debt is created when at the same time a debt is created, a fund is also created to pay that debt and that fund would not be otherwise available for general purposes. City of Trinidad v. Haxby,supra; In re Senate Resolution No.2, supra.
As a matter of law, a warrant cannot be approved by the controller unless funds have been appropriated and are available to pay the warrant. When the bank advances funds for a period of time prior to being reimbursed for accepted warrants, funds are already available to satisfy that debt. Consequently, there is no obligation placed upon future legislatures to satisfy any debt, and there is not a "debt" within the meaning of the constitutional provisions of article XI section 3.
SUMMARY
In conclusion, it is my opinion that warrants which are not returned by a return deadline set out in an agreement between the state treasurer and the bank may properly be considered valid and enforceable obligations of the state. A copy of this letter should be provided to the bank for its use in asking the Comptroller of the Currency to decide that the bank is entitled to an appropriate exemption. If you have any further questions concerning this matter, please do not hesitate to contact this office.
Very truly yours,
 J.D. MacFARLANE Attorney General
PUBLIC FUNDS TREASURER, STATE
C.R.S. 1973, 24-36-104(1) C.R.S. 1973, 24-30-202(7) C.R.S. 1973, 24-36-106(2) C.R.S. 1973, 24-30-202(5) and (8)
Colo. Const. art. XI, § 3
TREASURY, DEPT. OF All Other Areas
Warrants which are not returned by a return deadline set out in an agreement between the state treasurer and the bank may properly be considered valid and enforceable obligations of the state.